UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **SHELIA HOLMES** | **CIV. ACTION NO. 3:21-01139** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **KILOLO KIJAKAZI, ACTING COMMISSIONER, U.S. SOCIAL SECURITY ADMINISTRATION** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Before the court is Plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

### Background & Procedural History

Shelia Holmes filed the instant applications for Title II disability insurance benefits and Title XVI supplemental security payments on September 21, 2017. (Tr. 14, 167-175). Holmes, who was 55 years old at the time of the administrative hearing, asserted a disability onset date of December 8, 2016,[1] because of COPD, systemic lupus, fibromyalgia, sleep apnea, osteoarthritis, degenerative joint disease, high blood pressure, thyroid problems, anxiety/panic attacks, bladder spasms, and chronic pain. (Tr. 41, 199, 203). The state agency denied the claim initially on August 26, 2019, and upon reconsideration on December 12, 2019. (Tr. 70-117). Thereafter, Holmes requested and received a September 10, 2019 hearing before an Administrative Law

---

[1] Holmes filed prior disability applications in 2009, 2011, 2012, 2013, and 2015. (Tr. 71). The latest of these applications was denied on December 7, 2016, at the hearing level and apparently not further appealed. *Id*.

Judge ("ALJ").  (Tr. 35-69).  In an October 18, 2019 written decision, the ALJ determined that Holmes was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that she was able to make an adjustment to work that exists in significant numbers in the national economy.  (Tr. 12-28).  Holmes appealed the adverse decision to the Appeals Council.  On May 8, 2020, however, the Appeals Council denied Holmes's request for review; thus, the ALJ's decision became the final decision of the Commissioner.  (Tr. 4-6).[2]

On April 28, 2021, Holmes filed the instant complaint for judicial review of the Commissioner's final decision.  Following submission of the administrative transcript and supporting memoranda, the matter is now before the court.

## **Standard of Review**

This court's standard of review is (1) whether the final decision is supported by substantial evidence, and (2) whether the Commissioner applied the proper legal standards to evaluate the evidence.  *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (citation omitted).  The Supreme Court has emphasized that

> [t]he phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding.  Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations.  And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla."  It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Biestek v. Berryhill*, ___ U.S. ___, 139 S.Ct. 1148, 1154 (2019) (internal citations omitted).

The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its

---

[2] Upon Holmes's request, the Appeals Council extended the time for her to file a civil action until 30 days from receipt of its March 29, 2021 letter.  (Tr. 1-2).

judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

Upon finding substantial evidence, the court may only review whether the Commissioner has applied proper legal standards and conducted the proceedings consistently with the statute and regulations. *Carter v. Heckler*, 712 F.2d 137, 140 (5th Cir. 1983). In other words, where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed – *unless* the Commissioner applied an incorrect legal standard that materially influenced the decision. *See* 42 U.S.C. § 405; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

### Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . ." 42 U.S.C. § 423(d)(1)(A). A disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A).

The Commissioner of the Social Security Administration has established a five-step

sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual will be found not disabled if he or she does not have a "severe impairment," or a combination of impairments that is severe, and of the requisite duration.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1], and meets the duration requirement, will be considered disabled without the consideration of vocational factors.

Before proceeding to step four, the Commissioner assesses the individual's residual functional capacity, which is used at both step four and step five to evaluate the claim.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy. If the individual can make such an adjustment, then he or she will be found not disabled. If the individual is unable to adjust to other work, then he or she will be found disabled.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920.

When a finding of "disabled" or "not disabled" may be made at any step, a decision will be rendered at that point without proceeding to the remaining steps. 20 C.F.R. §§ 404.1520, 416.920; *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). "The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citation omitted).

## The ALJ's Findings

**I.      Steps One, Two, and Three**

The ALJ determined at step one of the sequential evaluation process that the claimant did not engage in substantial gainful activity during the relevant period. (Tr. 17). At step two, she found that the claimant suffered severe impairments of chronic obstructive pulmonary disease ("COPD"), osteoarthritis, fibromyalgia, lupus, gout, and degenerative disc disease of the cervical spine. *Id*.[3] She concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 17-18).

**II.     Residual Functional Capacity**

The ALJ next determined that, prior to June 1, 2019, the date the claimant became disabled, she had the residual functional capacity ("RFC") to perform sedentary work,[4] but had to avoid concentrated exposure to pulmonary irritants, such as dust, fumes, gases, and poor ventilation. (Tr. 18-26). Beginning June 1, 2019, however, the ALJ determined that the claimant's RFC was reduced by the following further limitations: her ability to finger, feel, and

---

[3]  The ALJ further determined that the claimant's diabetes mellitus type 2 and depressive disorder were not severe. *Id*.

[4]  Sedentary work entails:
> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

handle objects was reduced to an occasional basis only. *Id*.

### III. Steps Four and Five

With the assistance of a vocational expert ("VE") the ALJ determined at step four of the sequential evaluation process that the claimant was unable to return to past relevant work. (Tr. 26). Accordingly, she proceeded to step five. At this step, the ALJ determined that "[p]rior to the established disability onset date, the claimant was an individual closely approaching advanced age. Since the established disability onset date, the claimant's age category . . . changed to an individual of advanced age." (Tr. 26). The claimant had at least a high school education and is able to communicate in English. *Id*. She also had acquired work skills from past relevant work. *Id*.

The ALJ next observed that, for the period prior to June 1, 2019, given the claimant's vocational factors, and if she had an RFC that did not include any non-exertional limitations, then the Medical-Vocational Guidelines would direct a finding of not disabled. 20 C.F.R. §§ 404.1569, 416.969; Rule 201.07, Table 1,[5] Appendix 2, Subpart P, Regulations No. 4; Tr. 27. However, because the claimant's RFC *did* include non-exertional limitations, the ALJ consulted a VE to determine whether, and to what extent the additional limitations eroded the occupational base for work. *Id*. In response, the VE identified the representative jobs of **information clerk**, *Dictionary of Occupational Titles* ("DOT") Code # 237.367-022; and **appointment clerk**, DOT # 237.367-010. (Tr. 27, 53-55).[6]

---

[5] The ALJ inadvertently referenced Rule 204.00. (Tr. 27).

[6] The VE responded that for the information clerk and appointment clerk jobs, there were 104,000 and 130,000 positions available nationwide, respectively. (Tr. 27, 53-55). This incidence of work constitutes a significant number (and range) of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

6

Beginning on June 1, 2019, the ALJ determined that, given the claimant's vocational factors and the further reduced RFC, there were no jobs that existed in significant numbers in the national economy that the claimant could perform. (Tr. 27-28, 62). Thus, the ALJ found the claimant disabled as of June 1, 2019, but not before that date. *Id*.

## Analysis

Pursuant to the court's scheduling order, Holmes was required to submit a brief that *inter alia*, set forth "**specific errors** committed at the administrative level which entitle plaintiff to relief." (May 27, 2021, Sched. Order [doc. # 6]). The order cautioned that "[t]he court will consider only those errors **specifically identified** in the briefs. A general allegation that the ALJ's findings are unsupported by substantial evidence, standing alone, is insufficient to invoke the appellate function of the federal court." *Id*.

From what the court may discern by way of Holmes's memoranda and submissions, she contends that the ALJ's RFC and disability onset date are not supported by substantial evidence. She also appears to take issue with the ALJ's finding that her diabetes mellitus was a non-severe impairment. Ultimately, Holmes urges the court to amend the disability onset date to September 1, 2017. The court will endeavor to address Holmes's arguments in the order that the appear in her memoranda, but within the framework of the sequential evaluation process.

Holmes initially questioned the ALJ's finding at step two that her diabetes mellitus and her depressive disorder were not severe. In assessing the severity of an impairment, the Fifth Circuit has determined that "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (citing *Stone v. Heckler*, 752 F.2d 1099, 1101

7

(5th Cir.1985)).   However, when, as here, the ALJ's analysis proceeds beyond step two of the sequential evaluation process, strict adherence to *Stone* and its requirements is not required.   *See Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988); *Chapparo v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987); *Jones v. Bowen*, 829 F.2d 524, n. 1 (5th Cir. 1987).   Rather, under these circumstances, the effect of the ALJ's step two determination is measured by whether her step three finding and RFC are supported by substantial evidence.   This is so because once at least one severe impairment is determined to exist, all medically determinable impairments must be considered in the remaining steps of the sequential analysis.   *See* 20 C.F.R. §§ 404.1545, 416.945.   Indeed, the ALJ recited the foregoing regulations and proceeded to consider the medical record and the aggregate impact of Holmes's impairments.   *See* Tr. 16.[7]

To establish that a claimant's impairments meet or medically equal a listing at step three of the sequential evaluation process, the claimant must provide medical findings that support all of the criteria for a listed impairment (or most similarly listed impairment).   *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).   In determining whether a claimant's impairment(s) equals a listing, all evidence in the case record about the claimant's impairments and their effects are considered.   20 C.F.R. § 404.1526(c).   An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify.   *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891 (1990).   If the plaintiff fails to demonstrate the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that listings-level impairments are not present.   *Selders*, 914 F.2d at 620.

---

[7] The ALJ applied the psychiatric review technique to Holmes's mental impairment but found that it was not severe.   (Tr. 17).   The ALJ's determination is supported by the findings of the non-examining agency psychologist, Phillip Massad, Ph.D., who reviewed the record and opined that Holmes's mental impairments were non-severe.   (Tr. 80-82).   In fact, Holmes, herself, testified that she did not have any mental health problems other than forgetfulness.   (Tr. 57).

Here, Holmes neither argues, nor makes the requisite showing that her impairments are of listing-level severity. Instead, Holmes plainly reserves the principal thrust of her arguments for the ALJ's RFC and her associated onset of disability date. Social Security Ruling 18-01P[8] outlines the policy and procedure by which the Commissioner should determine the onset date of a disability:

> [w]e consider whether we can find that the claimant first met the statutory definition of disability at the earliest date within the period under consideration, taking into account the date the claimant alleged that his or her disability began. We review the relevant evidence and consider, for example, the nature of the claimant's impairment; the severity of the signs, symptoms, and laboratory findings; the longitudinal history and treatment course (or lack thereof); the length of the impairment's exacerbations and remissions, if applicable; and any statement by the claimant about new or worsening signs, symptoms, and laboratory findings.

(SSR 18-01P).

Here, the ALJ did precisely that. For the period prior to June 1, 2019, the ALJ primarily grounded her RFC on the findings of the consultative physician, Jason So, M.D.,[9] and the non-

---

[8] SOCIAL SECURITY RULING, SSR 18-01P; TITLES II AND XVI: DETERMINING THE ESTABLISHED ONSET DATE (EOD) IN DISABILITY CLAIMS (SSR 18-01P) (OCTOBER 2, 2018). This SSR applies to new applications filed on or after October 2, 2018, and to any claims that are pending on and after the applicable date when the Commissioner renders a determination or decision. *Id*.

[9] At the request of the state agency, Holmes underwent a January 27, 2018 consultative physical examination with Jason Min So, M.D. (Tr. 413-417). Holmes reported an inability to work because of chronic pain in her back, shoulder, legs, and neck. *Id*. She stated that she was able to take care of herself at home. *Id*. She cooked, cleaned, bathed, did laundry, and was able to drive. *Id*. She admitted to smoking half a pack of cigarettes per day. *Id*. She denied focal joint swelling, pain, or erythema. *Id*. She reported generalized weakness and fatigue. *Id*. Upon examination, Holmes had a normal gait and was able to rise from a sitting position without assistance. *Id*. She could squat down and back up without difficulty. *Id*.

Dr. So diagnosed COPD and fibromyalgia. *Id*. He opined that Holmes could walk or stand for a full workday. *Id*. She should be able to lift and carry objects approximately 15-20 pounds without limitation. *Id*. Despite subjective chronic pain, there were no objective signs that revealed limitation of movement or stance. *Id*. She performed the gait and station

9

examining agency medical consultant, David Coffman, M.D.[10] Then, beginning in June 2019, the ALJ noted that Holmes experienced a worsening of her cervical spine issues with a reduced range of motion, combined with gout flareups in her finger that had started approximately two months before the September 10, 2019 administrative hearing. (Tr. 58). In other words, the ALJ determined that beginning June 1, 2019, the claimant's allegations regarding her symptoms and limitations aligned with the other evidence. (Tr. 24).

Quite understandably, especially given that her date she was last insured (DLI) for Title II disability insurance benefits was December 31, 2018, Holmes contends that her impairments were disabling prior to her DLI, and as early as September 1, 2017. She offers several arguments to support her contention. First, she emphasizes that she has had gout and dermatitis since 2015, which makes working with her hands difficult to impossible, and very painful for her to wear shoes because of blisters. She emphasized that her gout flareups had become more frequent and that the bottom of her feet felt raw. Holmes cited several instances in her medical record that documented a rash and peeling skin.

For example, Holmes cited January 19, 2017, where the provider noted that she had "erythematous skin to bottom of both feet with dry peeling skin." (Tr. 307). At that visit, however, Holmes complained of "fungus on the bottom of her feet which itches and skin peels. Pt. reports was treated with Diflucan in the past, which was effective." (Tr. 306). The provider

---

examination without having to stop to catch her breath. *Id.* She also should be able to sit, hold a conversation, response appropriately to questions, and carry out and remember instructions without difficulty. *Id.* She had full range of motion in all joints. *Id.*

[10] On March 19, 2018, Dr. Coffman reviewed the medical record and completed a physical residual functional capacity assessment that fell somewhere between the sedentary and light exertional levels, with the additional requirement that Holmes needed to avoid concentrated fumes, dust, and other respiratory irritants and needed to stop smoking. (Tr. 82-85).

diagnosed athlete's foot and prescribed anti-fungal medication. (Tr. 308).

Holmes next referenced May 12, 2017, where Dr. Parker documented "ERYTHEMATOUS RASH ON HER HANDS AND WRISTS." (Tr. 303). However, Holmes omitted the fact that she had visited Dr. Parker that day because she had a rash from a recent poison ivy exposure. (Tr. 302). In fact, Dr. Parker diagnosed "contact dermatitis due to poison ivy." (Tr. 303).

Holmes stated that she continued to complain of rash and itching at office visits on June 20, July 24, and August 23, 2017. Upon inspection of the skin on June 20, 2017, however, Dr. Parker discerned no rash, lesions, or ulcer. (Tr. 297). Moreover, during that visit, Holmes stated that, except for joint pain, she had been doing well. (Tr. 296). Inspection of her skin on July 24, 2017, also was negative for rash, lesions, or ulcer. (Tr. 288).[11] In addition, contrary to Holmes's allegations that her foot rash made it difficult for her to walk, the medical record is replete with instances where she had a normal gait, station, and/or was able to ambulate. *See* Tr. 283-84, 601-609, 610-618, 640-646, 650-654, 655-663, 696-706 728-731, 787-792, 806-815 (to name a few).

Holmes also highlighted numerous encounters from 2017-2020[12] in her extensive medical record that document her numerous chronic impairments, tests, and treatments. (Pl. Brief, pgs. 1-3 [doc. # 9]). However, the ALJ discussed many of these medical records. Moreover, the agency medical consultant reviewed her records, but issued an RFC consistent with the ALJ's findings. Likewise, the consultative physician examined Holmes, listened to her

---

[11] The court was unable to locate an alleged August 23, 2017 visit in the administrative record.

[12] Holmes also cited a September 6, 2014 emergency room visit. However, evidence of that encounter does not appear in the administrative record. In any event, it precedes the relevant period.

history, but then issued an opinion that is supportive of the ALJ's RFC determination. Moreover, there is nothing in Holmes's *subsequent* treatment records that materially undermines the basis for the ALJ's RFC for the period at issue, i.e., prior to June 1,2019.

Holmes also emphasized that her treating osteopath, Dr. Parker, wrote a to whom it may concern letter, wherein he stated that Holmes was unable to work because of her chronic medical conditions, which included systemic lupus erythematous, severe COPD, osteoarthritis of multiple joints, DJD, degenerative of thoracic intervertebral disc, sleep apnea, anxiety and gout. *See* Nov. 1, 2017, letter; Tr. 404. The ALJ recited Dr. Parker's note in his decision but found it unpersuasive because it simply was a statement that Holmes was unable to work, which is entitled to no weight under the regulations. *See* 20 C.F.R. § 404.1520b(c)(i).

Holmes also attached to her memoranda additional notes from Dr. Parker from June 2016 and earlier indicating that it was difficult for her to lift and carry objects and no lifting or standing for extended periods. *See* Pl. Reply Brief, Exhs. [doc. # 11-1]. Relatedly, Holmes also submitted an arthritis RFC questionnaire dated August 20, 2012, from Jose Enriquez, M.D., which documented greater limitations of functioning than what the ALJ assigned. *Id*. In addition, Holmes submitted undated photographs of her hands and cited to treatment records from 2020. (Pl. Brief, Exh. [doc. # 9-1]).[13] All of this evidence, however, does not appear in the administrative record.

It is manifest that the role of the courts in reviewing social security appeals is wholly appellate, and therefore, courts may *not* take up new evidence that was not before the Commissioner. *Ellis v. Bowen*, 820 F.2d 682, 684 (5th Cir.1987); *see also Ferrari v. Astrue*,

---

[13] Holmes also proffered an explanation for how she came to spill Round Up on herself while not actually working in the yard – contrary to the office visit treatment notes. *See* Tr. 425-429.

435 Fed. App'x. 314, 315 n.4 (5th Cir. 2010) (courts cannot consider new evidence in the first instance). Instead, the only option is to remand the matter to the Commissioner for consideration of the new evidence. *Id*. To justify remand, however, "the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in a prior proceeding." *Bradley v. Bowen*, 809 F.2d 1054, 1058 (5th Cir. 1987) (citing, *inter alia*, 28 U.S.C. § 405(g)). In other words, to justify remand, the evidence must be "new," and not merely cumulative of what is already in the record. *Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir. 1989) (citation omitted). The evidence also must be "material"; *i.e.*, relevant, probative, and likely to have changed the outcome of the Commissioner's determination. *Id.* Finally, the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record. *Id.* Holmes has not demonstrated that her new evidence satisfies the foregoing criteria.

First, Holmes's references to 2020 treatment visits are not pertinent to the period at issue, which extends only until June 1, 2019. For the same reason, her notes and medical source statement from Drs. Parker and Enriquez all predate the period at issue, which begins on December 8, 2016.[14] Also, the photograph of her hands is undated, and, thus, it is not known whether it is pertinent to the relevant period.

Furthermore, even if Holmes had shown that the additional evidence was new and material, she has not proffered a good explanation for her failure to incorporate the "new" evidence into the administrative record. *Pierre, supra* (good cause for remand is not met unless plaintiff provides proper explanation to excuse her failure to submit the evidence earlier).

---

[14] The period prior to December 8, 2016, is subject to a final decision by the Commissioner that addressed Holmes's prior applications.

13

"[T]he mere fact that a medical report is of recent origin is not enough to meet the good cause requirement." *Pierre*, 884 F.2d at 803 (citation omitted).

In her brief, Holmes suggests that she might not have submitted at least some of the evidence previously because her memory is not good enough to remember everything that is wrong with her. At the administrative hearing, however, Holmes expressly admitted that she had had an opportunity to review the file beforehand and conceded that she had no objection to the contents of the file. (Tr. 38). Holmes then agreed that, with the addition of the new evidence that she had brought to the hearing, her file was complete. (Tr. 38-39).

In sum, Holmes has neither established that the post-decision evidence is material, nor demonstrated good cause for failing to incorporate the evidence into the administrative record. *Pierre, supra*. Accordingly, Holmes is not entitled to remand. *Id*.

## Conclusion

The ALJ in this case was tasked with determining whether the claimant was disabled. In so doing, she considered the hearing testimony, the medical records, and expert opinion evidence. The evidence was not necessarily uniform, and, according to Holmes, should have compelled an earlier disability onset date. However, conflicts in the evidence are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted).

At the end of the day, this court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, *even if the evidence weighs against the Commissioner's decision*." *Newton, supra* (emphasis added). Rather, the limited dual inquiry presented is whether the Commissioner's determination that the claimant was not disabled under the Social Security Act (for the period at issue) is 1) supported by substantial

evidence and 2) free of legal error.   Upon review of the arguments, the court is satisfied that the Commissioner's decision comports with the foregoing standard.   Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED, in its entirety, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. '636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.   A party may respond to another party=s objections within **fourteen (14) days** after being served with a copy thereof.   A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.   Timely objections will be considered by the District Judge before a final ruling issues.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 3rd day of August, 2022.

_____
KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE